THE STATE, JAMES PERCEY, PROSECUTOR, v. MARY
POWERS, ADMINISTRATRIX, &c.

1. The fact that a party in a suit does not believe that God will punish perjury, does not render such party incompetent as a witness, when offered in his own behalf.

2. The statutory right of a party to testify in his own behalf, is a civil right, the enjoyment of which cannot, under our constitution, be denied to any person merely on account of his religious principles.

An appeal in an action of debt, begun in a court for the trial of small causes, came on for trial in the Essex Common Pleas. The plaintiff, whose administratrix is now the defend- ant in *certiorari*, was sworn as a witness on his own behalf, and subsequently the defendant, now prosecutor in *certiorari*, tendered himself as a witness in his own behalf. The plaintiff objecting to his competency, on the ground that he did not believe in the existence of a Supreme Being and in a future state of rewards and punishments, the defendant stated that he did believe in the existence of a Supreme Being; that he did not disbelieve in a future state of rewards and punishments; that he believed the punishment prescribed by the state laws to be the only punishment which he would receive for false swearing; and further than that he could not honestly go. Upon this the Common Pleas excluded him as incompetent, allowed him an exception, and subsequently rendered judg- ment for the plaintiff.

Hence this *certiorari*.

Argued at June Term, 1888, before Justice DEPUE, VAN. SYCKEL and DIXON.

For the plaintiff in *certiorari*, Joseph A. Beecher.

For the defendant in *certiorari*, Ludlow McCarter.

The opinion of the court was delivered by

DIXON, J.   Assuming the common law rule to be, that no person can be a witness in a judicial proceeding unless he believes that God will punish perjury, it becomes necessary to consider the effect of that clause in the first article of our state constitution, which declares that "no person shall be denied the enjoyment of any civil right, merely on account of his religious principles."

By statute in this state, parties in suits are generally competent witnesses in their own behalf, and when the prosecutor tendered himself as a witness in his own behalf before the Common Pleas, his right to testify would have been conceded had he believed that God would punish perjury.   His right was denied merely because he did not so believe.   It was not that he did not think himself bound to tell the truth according to his oath, but only that he had not an affirmative faith that the Divine Being would inflict some penalty upon him if he violated his obligation.

Two questions therefore arise :  *First.* Is the right of a party to testify in his own behalf a civil right?   *Second.* Is the belief of a person as to whether God will punish perjury to be ranked among his religious principles ?

By civil rights, I understand those rights which the municipal law will enforce, at the instance of private individuals, for the purpose of securing to them the enjoyment of their means of happiness.   They are distinguishable from natural rights, which would exist if there were no municipal law, some of which are abrogated by municipal law, while others lie outside of its scope, and still others are enforceable under it as civil rights.   They are also distinguishable from political rights, which are directly concerned with the institution and administration of government.

Among civil rights is the right to prosecute and defend actions in the courts of the commonwealth according to the established rules of practice.   This proposition is sufficiently vindicated by a reference to the Civil Rights Cases in the Supreme Court of the United States (100 *U. S.*), where it is assumed

as true by all the justices of that tribunal.    Thus, in *Strauder*
v. *West Virginia*, 100 *U. S.* 303, Mr. Justice Strong, express-
ing the opinions of himself and all his associates, except Jus-
tices Clifford and Field, says that the fourteenth amendment
of the federal constitution was intended to secure to the colored
race all the *civil rights* which the white race enjoy, and speaks
of section 1917 of the Revised Statutes of congress (which
enacts that all persons within the jurisdiction of the United
States shall have the same right *to sue, be parties* and *give
evidence*) as putting in the form of a statute what had been
substantially ordained by the constitutional amendment; and
in *Ex parte Virginia*, 100 *U. S.* 339, 367, Mr. Justice Field,
speaking for himself and Mr. Justice Clifford, says: "The
equality of the protection secured (by the fourteenth amend-
ment) extends only to *civil rights*, as distinguished from those
which are political or arise from the form of the government
and the mode of its administration.    And yet the reach and
influence of the amendment are immense.    It opens the
courts of the country to every one, on the same terms, for the
security of his person and property, the prevention and redress
of wrongs, and the enforcement of contracts; it assures to
every one the same rules of evidence and modes of pro-
cedure," &c.

In the light of these statements, it seems clear that the
statutory right of a party to testify in his own behalf is a civil
right.

The next question is, whether a person's belief, as to the
punishment of perjury by the Deity, is to be classed among
his religious principles.    This is, I think, equally clear.

Religious principles are those sentiments, concerning the
relations between God and man, which may influence human
conduct.    Of these, perhaps the most influential hitherto has
been the view entertained as to the probability that God would
punish vice.    A person's sentiments on that subject must be
deemed part of his religious principles.

It is urged that disbelief cannot be called a religious prin-
ciple.    Perhaps, if one denied the existence of a Supreme

Being, it might in a proper sense be said that he had no religious principles, because he could not entertain any opinion touching the relations between God and man, unless a denial of any such relations might be so denominated. But to a person who believes in the existence of a Supreme Being, there pertain necessarily, or at least probably, some views with regard to the relations between Him and us, which modify the life of the individual. The mere fact that in those relations he has discovered no divine purpose of punishment for specific acts, does not militate against his possession of religious principles, and among them are his belief, his disbelief and his doubt concerning those relations.

From these premises it seems to follow that, when a party claims the statutory right to testify in his own behalf, he cannot be denied on the ground that he does not believe God will punish perjury.

It may be suggested that the civil rights protected by this clause of the constitution are only those which were recognized when the constitution was framed, and that, therefore, the right of a litigant to be a witness for himself having been created since that time, it is not among those thus secured. But it would, I think, be unreasonably cramping this provision thus to confine it.

One of the great causes which led to the settlement of the American colonies was the desire of the immigrants that their government should not make discriminations against them because of their religious tenets. It was not so much that they esteemed any particular privilege denied to them as of value sufficient to warrant their expatriation, but they insisted upon the more general doctrine that their belief or disbelief on religious topics should not debar them from rights which the laws afforded to other subjects.

Even up to the time of the Revolution this doctrine had not broadened out into the principle which we now consider just; for in the colonial constitution of July 2d, 1776, equality of rights was claimed for only those of Protestant faith, the language being " that no Protestant inhabitant of this colony

shall be denied the enjoyment of any civil right merely on account of his religious principles." But evidently the framers of that instrument were aiming to establish a rule of action which should control the operations of all departments of the government they were forming, and not merely to guard the rights they had previously possessed. It was because those rights had been inadequate that they had repudiated the government which refused to enlarge them, and to secure such extension the new government was organized. In this government, so important was to be the doctrine of impartiality towards the religious views of Protestants at least, that every person, entering upon the exercise of legislative functions, was required to bind himself, by an oath, not to assent to any law, vote or proceeding which should annul, repeal or alter it. The idea that, in enacting laws to confer upon the people civil rights not before enjoyed, or in their interpretation, this fundamental doctrine could be disregarded, appears wholly inadmissible. When, in 1844, a more enlightened spirit stripped the doctrine of its sectarian bonds and developed it into a principle of liberty, assuring to all persons the enjoyment of civil rights irrespective of their religious principles, there was certainly no purpose to lessen the scope or vigor of its operation. It was still designed to permeate every department of the government. The object in view was to guarantee to every one that his religious principles should never, under any circumstances, be made the ground of denying to him any civil right which, with different religious principles, he might lawfully claim. I can perceive no reason for insisting upon the enforcement of this constitutional provision, with regard to rights existing at the time of its adoption, which does not with equal strength support its application to those subsequently created.

My conclusion is, that the defendant below should have been admitted as a witness, and that, consequently, the judgment of the Common Pleas must be reversed. The record should be sent back to the Common Pleas for a new trial.

It is, of course, not intended to imply, by the foregoing ·opinion, that the competency of witnesses generally will not be affected by their religious principles. It is only when the civil rights of the proffered witness himself are involved that the constitutional prohibition can be interposed.

Mr. Justice DEPUE dissents.